**UNITED STATES DISTRICT COURT WESTERN DISTRICT OF WASHINGTON AT SEATTLE**

| | | |
|---|---|---|
| MICHAEL J. & JILL D. THORNES, | ) | |
| Plaintiffs, | ) | No. C10-1716 MJP |
| | ) | |
| v. | ) | **DEFENDANT IBM LENDER** |
| | ) | **BUSINESS PROCESS SERVICES,** |
| IBM LENDER BUSINESS PROCESS | ) | **INC. AND FANNIE MAE'S** |
| SERVICES, INC. and FANNIE MAE, | ) | **MOTION TO DISMISS FOR** |
| | ) | **FAILURE TO STATE A CLAIM** |
| Defendants. | ) | **UPON WHICH RELIEF CAN BE** |
| | ) | **GRANTED** |
| | ) | |
| | ) | **NOTE ON MOTION CALENDAR:** |
| | ) | **JANUARY 28, 2011** |
| | ) | |

## I.   INTRODUCTION & RELIEF REQUESTED

COMES NOW Defendants IBM Lender Business Process Services, Inc. ("LBPS") and Fannie Mae (hereinafter collectively referred to as "Defendants") and moves this court for dismissal with prejudice, without leave to amend, on the grounds Plaintiffs failed to state a claim upon which relief can be granted under FRCP 12(b)(6) because Plaintiffs fail to allege facts or law to sufficiently state any claim against Defendants.

DEFENDANTS' MOTION TO DISMISS –
PAGE 1 of 13
CASE NO. C10-1716 MJP

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

Plaintiffs' Complaint asserts various claims with regard to the contract and purchase of Plaintiffs' primary residence. While much of Plaintiffs' Complaint is devoted to explaining a number of conspiracy theories relating to the lending and mortgage industry, all of the allegations are made generally as to "defendants" or "Lender" and do not specifically name either of the Defendants or state the relationship between this loan and the Defendants.

## II.       STATEMENT OF FACTS

On or about July 20, 2007, Plaintiffs Michael J. Thornes and Jill D. Thornes ("Plaintiffs"), in order to secure repayment of a promissory note (the "Note") in the amount of $349,500.00, granted to Mortgage Electronic Registrations Systems, Inc. ("MERS") as nominee for Lender First Horizon Home Loans ("Lender") a deed of trust (the "Deed of Trust"). The Deed of Trust encumbers the real property commonly known as 13710 28th Avenue Northeast, Marysville, WA 98271 (the "Property"). The Deed of Trust was recorded on July 24, 2007, under Snohomish County Auditor's File No. 200707240267.  True and correct copies of the Note and Deed of Trust are attached hereto as Exhibits A and B, respectively.

Thereafter, Plaintiffs defaulted under the terms of the Note and Deed of Trust by failing to make payments due.

On or about February 10, 2009, MERS executed an assignment of the Deed of Trust (the "Assignment") whereby it assigned its interest under the Deed of Trust to MetLife Home Loans, a division of MetLife Bank N.A. ("MetLife"). The Assignment was recorded under Snohomish County Auditor's File No. 200903250329. A true and correct copy of the Assignment is attached hereto as Exhibit C[1].

---

[1]  This court may consider the contents of documents referenced in the complaint, may take judicial notice of publicly recorded documents, and may consider the documents without turning this motion into one for summary judgment. *See e.g., Shaw v. Hahn,* 56 f.3d 1128, 1129 n. 1 (9th Cir. 1995). "Even if a document is not attached to a

DEFENDANTS' MOTION TO DISMISS –
PAGE 2 of 13
CASE NO. C10-1716 MJP

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

On or about April 1, 2009, MetLife recorded an appointment of successor trustee (the "Appointment") naming Quality Loan Service Corporation of Washington the successor trustee. The Appointment was recorded under Snohomish County Auditor's File No. 200904010283. A true and correct copy of the Appointment is attached as Exhibit D.

On or about June 22, 2009, Quality Loan Service Corporation of Washington recorded a notice of trustee's sale (the "Notice of Sale") under Snohomish County Auditor's File No. 200906220661, which set the trustee's sale for September 18, 2009. A true and correct copy of the Notice of Sale is attached hereto as Exhibit E.

On or about July 29, 2010, Quality Loan Service Corporation of Washington recorded a second notice of trustee's sale (the "second Notice of Sale") under Snohomish County Auditor's File No. 201007290275, which set the trustee's sale for November 5, 2010. A true and correct copy of the second Notice of Sale is attached hereto as Exhibit F.

### III.    PROCEDURAL HISTORY

On October 22, 2010, Plaintiffs filed a petition in the United States District Court for the Western District of Washington alleging state and federal claims against LBPS and Fannie Mae. A true and correct copy of the Docket is attached hereto as Exhibit G; *See*, Dkt. No. 1. Together with the petition, Plaintiffs filed a motion for a temporary restraining order ("TRO") and a

---

complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Parrino v. FHP, Inc.* 146 F.3d 669, 707 (9th Cir. 1998). "A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Id.* In addition to ruling on a 12(b)(6) motion, the court may take judicial notice of facts outside the pleadings. *Mack v. South Bay Beer Distrib., Inc.,* 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated on other grounds, Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104 (1991). *See also In re Cendent Corp Derivative Action Litig.,* 189 F.R.D. 117, 127 (D.N.J. 1999) (in resolving a motion to dismiss, courts may consider the allegations of the complaint, documents attached to or specifically referenced in the complaint, and matters of public record). When this Court considers a motion to dismiss, "documents whose contents are alleged in the complaint and whose authenticity no party questions may be considered." *In re Stacs Elecs. Sec. Litig.,* 89 F.3d 1399, 1405 n. 4 (9th Cir. 1996) (quoting *Fecht v. The Price Co.,* 70 F.3d 1078, 1080 n.1 (9th Cir. 1995)).

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

motion for a preliminary injunction to enjoin the sale of their residence.  Dkt. Nos. 2 and 3.

Shortly after Plaintiffs filed their petition, Judge Marsha J. Pechman entered an order denying Plaintiffs' Motion for TRO stating that Plaintiffs' complaint failed to establish a likelihood of success on the merits because it failed to state a claim. *See*, Dkt. No. 9.  In Judge Pechman's order denying the TRO, she set a hearing for the Plaintiffs' motion for preliminary injunction on November 23, 2010, and stated that the Court would review any amended pleadings filed by the Plaintiffs before the hearing date. *Id*. On November 18, 2010, Plaintiffs filed an amended complaint. Dkt. No. 12. Plaintiffs' amended complaint included claims for Breach of Implied Covenant of Good Faith and Fair Dealing; Breach of Fiduciary Duty by Broker, Appraiser, Lender and Closing Agent; Negligence/Negligence Per Se; Fraud; Fraud by Non-Disclosure; violation of the Truth in Lending Act ("TILA"), 15 U.S.C.§ 1601, et seq.; Intentional Infliction of Emotional Distress; Unfair Business Practices; Quiet Title; and violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, et seq. *Id*.

### IV.   ISSUES PRESENTED

Whether Plaintiffs' Complaint must be dismissed under FRCP 12(b)(6) when Plaintiffs fail to make any factual allegations as to Defendants in support of any of Plaintiffs' claims.

### V.   EVIDENCE RELIED UPON

The Motion to Dismiss is supported by the pleadings, exhibits thereto, declaration of Defendant LBPS in support of Defendants' motion to dismiss, the records and docket on file in this case, and the undisputed facts of which the Court may take judicial notice.

### VI.   AUTHORITY & ARGUMENT

### A. STANDARD FOR A FEDERAL RULES OF CIVIL PROCEDURE 12(B)(6) MOTION TO DISMISS.

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    The Federal Rules of Civil Procedure 8(a)(2) requires a complaint to contain "a short and

2    plain statement of the claim showing that the pleader is entitled to relief."    Conclusory

3    allegations and "formulaic recitation of the elements of a cause of action" are insufficient to meet

4    this standard. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929

5    (2007). Additionally, certain claims such as fraud or misrepresentation require a higher pleading

6    standard.

7    

8        A complaint, or any cause of action alleged therein, must be dismissed when it fails to

9    state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A plaintiff fails to state a

10   claim if his complaint does not allege sufficient facts which, if true, would provide adequate

11   grounds for his or her entitlement to relief. *Bell Alt. Corp.*, 550 U.S. at 555. More recently, the

12   United States Supreme Court expanded upon its reasoning in *Twombly,* stating that:

13   

14           The pleading standard under F.R.C.P. 8 does not require "detailed factual
             allegations," but it demands more than an unadorned, the-defendant-
15           unlawfully-harmed-me accusation." A pleading that offers "labels and
             conclusions" or a "formulaic recitation of elements of a cause of action will
16           not do." Nor so does a complaint suffice if it tenders "naked assertions"
             devoid of "further factual enhancement."
17   

18   *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949, 177 L.Ed.2d 868 (2009), (internal citations

19   omitted).

20

21

22

23

24

25

26

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

To survive a motion to dismiss, a complaint must contain sufficient factual matter which, if accepted as true, "states a claim to relief that is plausible on its face." *Id.* (citing *Twombly,* 550 U.S. at 570). A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (citing *Twombly,* 550 U.S. at 556). In *Iqbal,* the court reasoned that the "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citing *Twombly,* 550 U.S. at 557).

The Supreme Court outlined two "working principles" for applying the *Twombly* standard in the motion to dismiss context:

> [(1)] the tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions…[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice [and (2)] only a complaint that states a plausible claim for relief survives a motion to dismiss.

*Id.* at 1949-50. The Court noted that the determination of whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense, "but where well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]" – "that the pleader is entitled to relief." *Id.* at 1950 (citing Fed. Civ. R. P. 8(a)). As additional guidance in applying these principles, the Court stated:

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief.

*Id.* Application of these pleading standards necessitates dismissal of Plaintiffs' amended petition. Here, as in *Iqbal*, Plaintiffs' Complaint has not "nudged" their claims "across the line from conceivable to plausible." *Id.* at 1951 (citing *Twombly,* 550 U.S. at 570).

## B. PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AS TO DEFENDANTS UNDER FRCP 12(b)(6).

### 1. <u>Plaintiffs' Breach of Implied Covenant of Good Faith and Fair Dealing Claim Fails as to Defendants.</u>

A duty of good faith and fair dealing is implied in every contract, which "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Badgett v. Security State Bank*, 116 Wn.2d 563, 569, 807 P.2d 356 (1991).  This duty exists only in relation to the performance of a specific contract term; there is no "free-floating" duty unattached to an existing contract. *Keystone Land & Development Co. v. Xerox Corp.*, 152 Wn.2d 171, 177, 94 P.3d 945 (2004).

Plaintiffs' Complaint does not contain any allegations or assertions as to conduct by Defendant LBPS or Defendant Fannie Mae that would constitute a breach of the implied duty of good faith and fair dealing.  Plaintiffs' assertions involve the initial contracting phase and actions leading up to execution of the Note and Deed of Trust, but Defendants were not a party to the contract nor were they a party during the pre-contract period.  Accordingly, Plaintiffs' claim for breach of implied duty of good faith and fair dealing should be dismissed.

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

**2.   Plaintiffs' Breach of Fiduciary Duty by Broker, Appraiser, Lender, and Closing Agent Claims Fail as to Defendants.**

A breach of fiduciary duty may impose tort liability. Restatement (Second) of Contracts sec. 193 (1983); *Tedvest Arginomics VI v. Tedmon Prop. V*, 49 Wn. App. 605, 607, 744 P.2d 648 (1987). Whether a legal duty exists is a question of law. *Hansen v. Friend*, 118 Wn.2d 476, 479, 824 P.2d 483 (1992).

The general rule in Washington is that a lender [its successors, assigns, or designated loan servicer] is not a fiduciary of its borrower. *Miller v. U.S. Bank of Wash.*, 72 Wn. App. 416, 426, 865 P.2d 536 (1994). Rather, a special relationship must develop between the parties before a fiduciary duty exists. *Id.* at 427. Where the parties deal with each other at arm's length, such as a borrower-lender relationship, no fiduciary duty arises. *Interstate Production Credit Assoc. v. MacHugh*, 61 Wn. App. 403, 411, 810 P.2d 535 (1991).

Plaintiffs failed to assert that a special relationship exists between Plaintiffs and Defendant LBPS or Defendant Fannie Mae such that a fiduciary duty would arise. As no fiduciary duty exists on the part of Defendants, Plaintiffs' claim for breach of fiduciary duty should be dismissed.

**3.   Plaintiffs' Claim for Negligence/Negligence Per Se Fails as to Defendants.**

To prevail on a claim for negligence, the plaintiff must show the defendants owed a duty of care, breached that duty, and that the defendant's breach was the proximate cause of plaintiff's injury. *See Phillips v. Kaiser Aluminum & Chemical Corp.*, 74. Wn. App. 741, 875 P.2d 1228 (1994).

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

Plaintiffs make no allegations as to Defendants in their claim for negligence. Defendants had no involvement in the lending process; thus, no duty of care.  Therefore, to the extent that Plaintiffs assert any negligence claim against Defendants, it should be dismissed.

**4.    Plaintiffs' Claim for Common Law Fraud Fails as to Defendants.**

All averments of fraud and the circumstances constituting fraud must be stated with particularity. Fed. R. Civ. P. 9(b). When pleading a civil fraud claim, a complaint must, at a minimum, "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004). Additionally, under Washington case law, a fraud claim requires that plaintiff must establish all nine elements of fraud by clear, cogent, and convincing evidence. *Stieneke v. Russi,* 145 Wn. App. 544, 560, 190 P.3d 60 (2008). The nine elements of fraud are: 1) Representation of an existing fact; 2) Materiality of the representation; 3) Falsity of the representation; 4) The speaker's knowledge of its falsity; 5) The speaker's intent that it be acted upon by the plaintiff; 6) Plaintiff's ignorance of the falsity; 7) Plaintiff's reliance on the truth of the representation; 8) Plaintiff's right to rely upon it; and 9) Resulting damages. *Carlile v. Harbour Homes, Inc.,* 147 Wn. App. 193, 204-205, 194 P.3d 280 (2008), *review granted in part*, 210 P.3d 1019 (2009).

In this case, Plaintiffs' fraud claim does not contain any allegation of wrongdoing on the part of Defendants, and Plaintiffs fail to plead even one of the nine elements to state a claim for fraud as to Defendants. The Complaint provides no facts that support any claim for fraud and therefore fails to apprise Defendants of the underlying action that supports a claim for fraud. Thus, Plaintiffs' claim clearly does not reach the heightened standard a fraud claim is subject to and should be dismissed.

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### 5.   Plaintiffs' Claim for Fraud by Non-Disclosure Fails as to Defendants.

Plaintiffs' fraud claim must meet the heightened pleading requirement set forth in FRCP 9(b) and as outlined in the preceding section.  When pleading a civil fraud claim, a complaint must, at a minimum, "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *See Edwards*, 356 F.3d at 1066. In addition, "[s]uch allegations must define the specific involvement of the individual defendants." *Lewis on Behalf of Nat. Semiconductor Corp. v. Sporck*, 612 F.Supp. 1316, 1325 (1985). Where, as here, the complaint accuses several actors of participating in an allegedly fraudulent scheme, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations…and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (citation and quotations omitted).

Here, Plaintiffs' fraud by non-disclosure claim includes no allegations of wrongdoing by Defendant LBPS or Defendant Fannie Mae. Plaintiffs' allegations of fraud by non-disclosure are nothing more than vague, non-specific assertions.  Additionally, as outlined in the previous section, a fraud claim under Washington law must establish the nine elements of fraud by clear, cogent, and convincing evidence.

In this case, Plaintiffs fail to plead even one of the nine elements to state a claim for fraud as to Defendants. The Complaint provides no facts that support any claim for fraud and therefore fails to apprise Defendants of the underlying action that supports a claim for fraud. Thus, Plaintiffs' claim clearly does not reach the heightened standard a fraud claim is subject to and should be dismissed.

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

**6.      Plaintiffs' Claim for Violations of the Truth in Lending Act 15 USC §1601, et seq. Fails as to Defendants.**

Plaintiffs' TILA claim is barred by its one year statute of limitations. TILA provides, "Any action under this section may be brought...within one year of the occurrence of the violation." 15 U.S.C. §1640(e); *Hubbard v. Fidelity Fed. Bank*, 91 F.3d 75, 79 (9th Cir. 1996). In a related case alleging inaccurate disclosures and faulty rescission notices, the court held TILA's one year limitation period begins to run the date the loan is consummated. *In re Wepsic*, 231 B.R. 768, 775 (S.D. Cal. 1998). *See also, Stevens v. Rock Springs Nat'l. Bank,* 497 F.2d 307 (10th Cir. 1974); *Cooper v. First Gov't Mtg. and Inv. Corp.*, 238 F.Supp.2d 50 (D.D.C. 2002).

Plaintiffs' TILA claim fails for a number of reasons. First, Plaintiffs assert no facts relating to Defendants in support of the TILA claim. Second, it appears to relate to the closing of their loan; as Defendants were not a party to the contract at closing, Plaintiffs cannot assert liability on the part of Defendants for conduct associated with the loan closing. Further, even if the Lender failed to make – or inadequately make – TILA disclosures, Plaintiffs had one year from the loan closing to file their TILA claim against the Lender. The loan closed on July 20, 2007, and Plaintiffs filed their Complaint on October 22, 2010, which is clearly outside the one year limitation. As such, Plaintiffs' TILA claim should be dismissed.

**7.      Plaintiffs' Claim for Intentional Infliction of Emotional Distress Fails as to Defendants.**

To prevail on a claim of outrage, or intentional infliction of emotional distress ("IIED") the plaintiff must prove 1) extreme and outrageous conduct, 2) intentional or reckless infliction of emotional distress, and 3) that severe emotional distress actually resulted. *Womack v. Rardon*, 133 Wn. App. 254, 260-61, 135 P.3d 542 (2006). To be considered outrageous and extreme, the conduct complained of must be so outrageous in character and so extreme in degree as to be

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

indecent, atrocious, and intolerable in a civilized community. *Kloepfel v. Bokor,* 149 Wn.2d 192, 196, 66 P.3d 630 (2003).

Plaintiffs failed to allege any conduct of Defendants that could be deemed outrageous. Further, Plaintiffs failed to allege any actual harm.  Accordingly, Plaintiffs' IIED claim should be dismissed.

**8.      Plaintiffs' Claim for Unfair Business Practices Fails as to Defendants.**

Under the Washington Consumer Protection Act ("CPA"), the plaintiff bears the burden of proving each of the following elements: 1) that the defendant engaged in an unfair or deceptive act or practice; 2) that the act or practice occurred in the conduct of defendant's trade or commerce; 3) that the act or practice affected the public interest; 4) that plaintiff was injured in either his business or his property; and 5) that defendant's act or practice caused plaintiff's injury. *Westview Investments, Ltd. v. U.S. Bank Nat. Ass'n*, 133 Wn. App. 835, 854, 138 P.3d 638 (2006).

Plaintiffs allege no specific acts of conduct on behalf of Defendant LBPS or Defendant Fannie Mae.  As such, Plaintiffs have failed to establish a claim against Defendants for violations of the CPA.  Accordingly, Plaintiffs' CPA claim should be dismissed.

**9.      Plaintiffs' Claim for Quiet Title Fails as to Defendants.**

A plaintiff in an action to quiet title must set forth in his complaint the nature of his estate, claim or title to the property. RCW 7.28.120. Plaintiffs failed to set forth their estate, title or claim to the property, and did not allege any facts against the Defendants relevant to a quiet title action. This cause of action should be dismissed.

**10.      Plaintiffs' Claim for Violation of the Real Estate Settlement Procedure Act, 12 U.S.C. § 2601, et seq. Fails as to Defendants.**

DEFENDANTS' MOTION TO DISMISS –
PAGE 12 of 13
CASE NO. C10-1716 MJP

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

RESPA requires various disclosures at loan settlement to protect the consumer. 12 U.S.C. § 2601, et seq. Plaintiffs' claims arise from alleged inadequate disclosures. Similar to TILA, RESPA also has a one year statutory limitation period for disclosure failures. 12 U.S.C. § 2614; *Blue v. Fremont Investment & Loan*, 562 F. Supp.2d 33, 34, 43-44 (D.D.C. 2008). The limitation period begins to run at the time of closing for a RESPA claim. *Snow v. First Am. Title Ins. Co.*, 332 F.3d 356, 359-60 (5th Cir. 2003).

Not only do Plaintiffs fail to allege any facts concerning a RESPA violation against the Defendants, Plaintiffs' RESPA claim is time barred. For both reasons, it should be dismissed.

## VII.   CONCLUSION

Based on the foregoing, the Defendant IBM Lender Business Process Services, Inc. and Defendant Fannie Mae respectfully request that the Court dismiss Plaintiffs' Complaint in entirety, with prejudice.

## VIII.   PROPOSED ORDER

A proposed order granting the requested relief accompanies this Motion.

DATED this ___ day of December, 2010.

**ROUTH CRABTREE OLSEN, P.S.**

By: _____

Lauren Davidson Humphreys, WSBA No. 41694
Of Attorneys for Defendants IMB Lender
Business Process Services, Inc. and Fannie Mae

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

5607

# INTEREST-ONLY PERIOD FIXED RATE NOTE

July 20th, 2007                    MARYSVILLE                    WASHINGTON
　　　　[Date]                        [City]                        [State]

13710 28TH AVENUE NORTHWEST, MARYSVILLE, Washington 98271

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   349,500.00   (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is
**FIRST HORIZON HOME LOANS, A DIVISION OF FIRST TENNESSEE BANK N.A.**

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled
to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate
of       6.750  %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of
this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month. This payment will be for interest only for the first      120      months, and then will
consist of principal and interest.
I will make my monthly payment on the      1st      day of each month beginning on    September 1st, 2007    . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both
principal and interest it will be applied to interest before Principal. If, on    August 1st, 2037    , I still owe amounts
under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at    PO BOX 809
MEMPHIS, TN 38101                                              or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $     1,965.94     for the first     120     months of this Note,
and thereafter will be in the amount of U.S. $     2,657.48     . The Note Holder will notify me prior to the date of
change in monthly payment.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment
as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to
the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the
Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder

MULTISTATE  INTEREST-ONLY   PERIOD  FIXED RATE NOTE -Single  Family- Fannie  Mae UNIFORM  INSTRUMENT
Form 3271 1/01 (rev. 9/06)
Wolters Kluwer Financial Services
VMP ®-836N (0609)
Page 1 of 3                            Initials: _____

Exhibit A
Page 1 of 3

agrees in writing to those changes. However, if the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest as well as during the time that my payments consist of principal and interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, the amount of my monthly payment will not decrease; however, the principal and the interest required under this Note will be paid prior to the Maturity Date.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) **Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of          15     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be       5.00        % of my overdue payment of interest and/or principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) **Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) **Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) **No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) **Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

Exhibit A
Page 2 of 3

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)       _____ (Seal)
MICHAEL J. THORNES                    -Borrower     JILL E. THORNES                       -Borrower

_____ (Seal)       _____ (Seal)
                                      -Borrower                                            -Borrower

_____ (Seal)       _____ (Seal)
                                      -Borrower                                            -Borrower

_____ (Seal)       _____ (Seal)
                                      -Borrower                                            -Borrower

*[Sign Original Only]*

5607

VMP ®-836N (0609)                    Page 3 of 3                    Form 3271 1/01 (rev. 9/06)

**Exhibit A**

**Page 3 of 3**

Return To:
FHHL - POST CLOSING MAIL ROOM

1555 W WALNUT HILL LN #200 MC 6712
IRVING, TX 75038

Assessor's Parcel or Account Number   County: 0053200000801 City: N/A
Abbreviated Legal Description PTN LOT 8, NORTH EVERETT
SUBURBAN TRACTS, VOLUME 22 PAGES 91 & 92
[Include lot, block and plat or section, township and range]   Full legal description located on page   3
Trustee FIRST AMERICAN TITLE INSURANCE COMPANY
        2917 PACIFIC AVENUE
        EVERETT, WA 98201        Additional Grantees located on page   N/A
                        [Space Above This Line For Recording Data]

# DEED OF TRUST
                                                                    5607
                                                    MIN   100085200615156074

CAN 1008941

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21   Certain rules regarding the usage of words used in this document are also provided
in Section 16
(A) "Security Instrument" means this document, which is dated   July 20th, 2007
together with all Riders to this document
(B) "Borrower" is
MICHAEL J. THORNES &
JILL E. THORNES, Husband & Wife
    D. JDT.

Borrower is the trustor under this Security Instrument
(C) "Lender" is
FIRST HORIZON HOME LOANS, A DIVISION OF FIRST TENNESSEE BANK N.A.

WASHINGTON -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  WITH MERS
-6A(WA) (0012)       Form 3048 1/01
Page 1 of 15        Initials
VMP MORTGAGE FORMS - (800)521-7291

Exhibit B
Page 1 of 16

Lender is a NATIONAL BANK
organized and existing under the laws of THE UNITED STATES OF AMERICA
Lender's address is 4000 HORIZON WAY, IRVING, TEXAS 75063

(D) "Trustee" is FIRST AMERICAN TITLE INSURANCE COMPANY
2917 PACIFIC AVENUE, EVERETT, WA 98201

(E) "MERS" is Mortgage Electronic Registration Systems, Inc MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O Box 2026, Flint, MI 48501-2026, tel (888) 679-MERS

(F) "Note" means the promissory note signed by Borrower and dated July 20th, 2007
The Note states that Borrower owes Lender

THREE HUNDRED FORTY NINE THOUSAND FIVE HUNDRED & 00/100            Dollars
(U S $        349,500.00) plus interest Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than AUGUST 1, 2037

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property "

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower The following Riders are to be executed by Borrower [check box as applicable]

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers

(M) "Escrow Items" means those items that are described in Section 3

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument

▮▮▮▮5607

▮▮▮ -6A(WA) (0012)            Page 2 of 15            Initials ▮▮▮            Form 3048 1/01

**(Q)** "RESPA" means the Real Estate Settlement Procedures Act (12 U S C Section 2601 et seq ) and its implementing regulation, Regulation X (24 C F R Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

**(R)** "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS  This Security Instrument secures to Lender  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the       County       of       Snohomish
                                    [Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]

    All that tract or parcel of land as shown on Schedule "A" attached
    hereto which is incorporated herein and made a part hereof.

Parcel ID Number   County: 00532000000801 City: N/A        which currently has the address of
13710 28TH AVENUE NORTHWEST                                                                [Street]
MARYSVILLE                                    [City] , Washington    98271    [Zip Code]
("Property Address")

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property  All replacements and additions shall also be covered by this Security Instrument  All of the foregoing is referred to in this Security Instrument as the "Property " Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

5607
-6A(WA) (0012)                          Page 3 of 15      Initials              Form 3048  1/01



of record  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

UNIFORM COVENANTS  Borrower and Lender covenant and agree as follows

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note  Borrower shall also pay funds for Escrow Items pursuant to Section 3  Payments due under the Note and this Security Instrument shall be made in U S currency  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender  (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15  Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current  Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds  Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower  If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure  No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority  (a) interest due under the Note, (b) principal due under the Note, (c) amounts due under Section 3  Such payments shall be applied to each Periodic Payment in the order in which it became due  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property, (b) leasehold payments or ground rents on the Property, if any, (c) premiums for any and all insurance required by Lender under Section 5, and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10  These items are called "Escrow Items "  At origination or at any

time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees, and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement, (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires What Lender requires pursuant to the preceding sentences can change during the term of the Loan The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably Lender may require Borrower to pay, in connection with this Loan, either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense Lender is under no obligation to purchase any particular type or amount of coverage Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee Lender shall have the right to hold the policies and renewal certificates If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender Lender may make proof of loss if not made promptly by Borrower Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened During such repair and restoration period, Lender shall have the right to

-6A(WA) (0012)                    Page 6 of 15                    Initials                    Form 3048  1/01

hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower Such insurance proceeds shall be applied in the order provided for in Section 2

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim The 30-day period will begin when the notice is given In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration

Lender or its agent may make reasonable entries upon and inspections of the Property If it has reasonable cause, Lender may inspect the interior of the improvements on the Property Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence

-6A(WA) (0012)

Page 7 of 15

Initials

Form 3048  1/01

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property Lender's actions can include, but are not limited to (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court, and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed Borrower is not a party to the Mortgage Insurance

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums)

-6A(WA) (0012)     Page 8 of 15     Initials     Form 3048   1/01

Exhibit B
Page 8 of 16

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance " Further

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value  Any balance shall be paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds

Initials _____

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer") (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note) Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means Notice to any one Borrower shall constitute notice to all Borrowers unless

-6A(WA) (0012)   Page 10 of 15   Initials _____   Form 3048 1/01

Applicable Law expressly requires otherwise  The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender  Borrower shall promptly notify Lender of Borrower's change of address  If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure
There may be only one designated notice address under this Security Instrument at any one time  Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower  Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender  If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument

**16. Governing Law, Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law  Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract  In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision

As used in this Security Instrument  (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (b) words in the singular shall mean and include the plural and vice versa, and (c) the word "may" gives sole discretion without any obligation to take any action

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of  (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate, or (c) entry of a judgment enforcing this Security Instrument  Those conditions are that Borrower  (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or agreements, (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged  Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender  (a) cash, (b) money order, (c) certified check, bank check, treasurer's check

-6A(WA) (0012)                          Page 11 of 15          Initials            Form 3048  1/01

or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity, or (d) Electronic Funds Transfer Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred However, this right to reinstate shall not apply in the case of acceleration under Section 18

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20

21. Hazardous Substances. As used in this Section 21 (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials, (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law, and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products)

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of

release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law Nothing herein shall create any obligation on Lender for an Environmental Cleanup

NON-UNIFORM COVENANTS Borrower and Lender further covenant and agree as follows

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance

24. Substitute Trustee. In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law

-6A(WA) (0012)          Page 13 of 15     Initials          Form 3048  1/01

**25. Use of Property** The Property is not used principally for agricultural purposes

**26. Attorneys' Fees.** Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it

Witnesses



_____                    _____ (Seal)
                                                 MICHAEL J. THORNES                -Borrower

_____                    _____ (Seal)
                                                 JILL E. THORNES                   -Borrower
                                                 JDT

_____ (Seal)             _____ (Seal)
                    -Borrower                                                      -Borrower

_____ (Seal)             _____ (Seal)
                    -Borrower                                                      -Borrower

_____ (Seal)             _____ (Seal)
                    -Borrower                                                      -Borrower

5607
-6A(WA)  (0012)                    Page 14 of 15                    Form 3048  1/01

Exhibit B
Page 14 of 16

**STATE OF WASHINGTON**
County of **SNOHOMISH** } ss:

On this day personally appeared before me

**MICHAEL J. THORNES & JILL K. THORNES**
D. JDT.

to me known to be the individual(s) described in and who executed the within and foregoing instrument, and acknowledged that he/she/they signed the same as his/her/their free and voluntary act and deed, for the uses and purposes therein mentioned.

GIVEN under my hand and official seal this 20 day of July 2007

Notary Public in and for the State of Washington, residing at
Arlington
My Appointment Expires on 5-73-10

**MICHELLE L GROSHONG**

5607
-6A(WA) (0012)                     Page 15 of 15          Initials          Form 3048  1/01

## EXHIBIT 'A'

Property—  13710 28th Avenue NW, Marysville, WA 98271

THAT PORTION OF LOT 8, NORTH EVERETT SUBURBAN TRACTS, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 22 OF PLATS, PAGES 91 AND 92, IN SNOHOMISH COUNTY, WASHINGTON, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF SAID LOT 8, THENCE NORTH 89°42'51" EAST 435 FEET TO THE TRUE POINT OF BEGINNING,
THENCE SOUTH 0°14'29" EAST 120 FEET, THENCE SOUTH 89°42'51" WEST 435 FEET, THENCE SOUTH 0°44'29" EAST 20.01 FEET TO THE SOUTHWEST CORNER OF SAID LOT 8, THENCE NORTH 89°42'51" EAST 639.78 FEET TO THE SOUTHEAST CORNER OF SAID LOT 8, THENCE NORTH 0°28'10" WEST 140 FEET TO THE NORTHEAST CORNER OF SAID LOT 8, THENCE SOUTH 89°42'51" WEST 205.45 FEET TO THE TRUE POINT OF BEGINNING.

A.P.N. 00532000000801

Unofficial Document

Exhibit B
Page 16 of 16

Recording requested by:
LandAmerica Default Services Company

When recorded mail to:

MetLife Home Loans a division of
MetLife Bank NA
4000 Horizon Way
Foreclosure Dept. #8205
Irving, TX 75063



200903250329      1    PG
03/25/2009 1:33pm $14.00
SNOHOMISH COUNTY, WASHINGTON

Space above this line for recorders use

| | | |
|---|---|---|
| TS # WA-09-246959-SH | Order # 3131150 | Loan #▓▓▓5607 |
| MERS MIN No.: | | Investor No. 1704462250 |
| 100085200615156074 | | |

### Assignment of Deed of Trust

For value received, the undersigned corporation hereby grants, assigns, and transfers to

**MetLife Home Loans, a division of MetLife Bank, N.A.**    northpoint escrow + title
order no. 30020301

all beneficial interest under that certain Deed of Trust dated 7/20/2007 executed by **MICHAEL J. THORNES & JILL D. THORNES, HUSBAND & WIFE**, as Trustor(s) to **FIRST AMERICAN TITLE INSURANCE COMPANY**, as Trustee and recorded as Instrument No. 200707240267, on 7/24/2007, in Book XXX, Page XXX of Official Records, in the office of the County Recorder of SNOHOMISH County, WA together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

Dated: 2/10/2009 1:15 PM

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC AS NOMINEE FOR FIST HORIZON
HOME LOANS, A DIVISION OF FIST TENNESSEE
BANK N.A.

By: *Marcia Williams*

Marcia Williams
Assistant Secretary

State of ~~Texas~~ )
                   ) ss
County of ~~Dallas~~ )

On *March 17, 2009* before me, *Robyn Alayne Lovell* the undersigned Notary Public, personally appeared *Marcia Williams* personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal

Signature *R. Lovell*    (Seal)

[Notary seal: ROBYN ALAYNE LOVELL NOTARY PUBLIC STATE OF TEXAS EXPIRES 02-13-2013]

Exhibit C
Page 1 of 1

2009040102B3      2      PGS
04/01/2009 1:29pm $15.00
SNOHOMISH COUNTY, WASHINGTON

When recorded return to:

Quality Loan Service Corp. of Washington
2141 5th Avenue
San Diego, CA 92101

Space above this line for recorders use only

TS # WA-09-246959-SH        Order # 3131150          Loan #▇▇▇5607
APN: 005320-000-008-01
MERS MIN No.:                                         Investor No. 1704462250
100085200615156074

2/15

# Appointment of Successor Trustee
Northpoint escrow + title
order no. 36620301

NOTICE IS HEREBY GIVEN that QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, a
corporation formed under RCW 61.24, whose address is 2141 5th Avenue   San Diego, CA 92101 is hereby
appointed Successor Trustee under that certain Deed of Trust dated 7/20/2007, executed by MICHAEL J.
THORNES & JILL D. THORNES, HUSBAND & WIFE as Grantor, in which FIRST AMERICAN TITLE
INSURANCE COMPANY was named as Trustee, MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC AS NOMINEE FOR FIST HORIZON HOME LOANS, A DIVISION OF FIST
TENNESSEE BANK N.A. as Beneficiary, and recorded on 7/24/2007, under Auditor's File No.
200707240267 as book XXX and page XXX , Official Records.  Said real property is situated in SNOHOMISH
County, Washington and is more particularly described in said Deed Of Trust.

IN WITNESS WHEREOF, the Beneficiary, MetLife Home Loans, a division of MetLife Bank, N.A. , has
hereunto set his hand; if the undersigned is a corporation, it has caused its corporate name to be signed and
affixed hereunto by its duly authorized officers.

Page 1

Exhibit D
Page 1 of 2

Appointment of Successor Trustee
TS # WA-09-246959-SH
Page 2

Dated:  03/30/2009

MetLife Home Loans, a division of MetLife Bank, National Association, by Quality Loan Service Corp of Washington, its attorney in Fact

By: Sierra West, Asst. Secretary

State of Washington)
County of Kitsap)

On 3/30/2009 before me, **Allyson M. McGuire** a notary public, personally appeared **Sierra West**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Washington that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____  (Seal)

**Allyson M. McGuire**

Notary Public in and for the State of  WA
My Commission expires:  11-9-2012

ALLYSON M. McGUIRE
COMMISSION EXPIRES
NOTARY
PUBLIC
11-09-12
STATE OF WASHINGTON

Exhibit D
Page 2 of 2

RECORDING REQUESTED BY
MetLife Home Loans a division of MetLife
Bank NA;
4000 Horizon Way
Foreclosure Dept. #6205
Irving, TX 75063

AND WHEN RECORDED MAIL TO:
Quality Loan Service Corp. of Washington
2141 5th Avenue
San Diego, CA 92101

3131150

20090622061      4      PGS
06/22/2009 1:54pm $45.00
SNOHOMISH COUNTY, WASHINGTON

SPACE ABOVE THIS LINE FOR RECORDER'S USE

Loan No: ████5607          APN: 005320-000-008-01          4445  TS No: WA-09-246959-SH
northpoint escrow + title
order no. 30120301

## NOTICE OF TRUSTEE'S SALE
## PURSUANT TO THE REVISED CODE OF WASHINGTON
## CHAPTER 61.24 ET. SEQ.

I.        NOTICE IS HEREBY GIVEN that Quality Loan Service Corp. of Washington, the undersigned Trustee, will
on 9/18/2009, at 10:00 AM At the main entrance to the Superior Courthouse, 3000 Rockefeller Avenue, Everett,
WA sell at public auction to the highest and best bidder, payable, in the form of cash, or cashier's check or certified
checks from federally or State chartered banks, at the time of sale the following described real property, situated in the
County of SNOHOMISH, State of Washington, to-wit:

    Abbreviated Legal: PTN LOT 8, NORTH EVERETT SUBURBAN TRACTS, VOLUME 22 PAGES 91 & 92

    For Full Legal See Attached Exhibit "A"

Commonly known as:
**13710 28TH AVENUE NORTHWEST
MARYSVILLE, WA 98271**

which is subject to that certain Deed of Trust dated **7/20/2007**, recorded **7/24/2007**, under Auditor's File No.
**200707240267**, in Book **XXX**, Page **XXX** records of SNOHOMISH County, Washington, from **MICHAEL J.
THORNES & JILL D. THORNES, HUSBAND & WIFE**, as Grantor(s), to **FIRST AMERICAN TITLE
INSURANCE COMPANY**, as Trustee, to secure an obligation in favor of **MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC AS NOMINEE FOR FIST HORIZON HOME LOANS, A DIVISION OF
FIST TENNESSEE BANK N.A.**, as Beneficiary, the beneficial interest in which was assigned by **MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR FIST HORIZON HOME LOANS, A
DIVISTION OF FIST TENNESSEE BANK N.A.** to MetLife Home Loans, a division of MetLife Bank, N.A. .

II.       No action commenced by the Beneficiary of the Deed of Trust is now pending to seek satisfaction of the
obligation in any Court by reason of the Borrower's or Grantor's default on the obligation secured by the Deed of
Trust/Mortgage.

Exhibit E
Page 1 of 4

Loan No: ████5607                    T.S. No.: WA-09-246959-SH

III.        The default(s) for which this foreclosure is made is/are as follows:

Failure to pay when due the following amounts which are now in arrears: **$28,979.91**

IV.        The sum owing on the obligation secured by the Deed of Trust is:  The principal sum of **$349,500.00**,together with interest as provided in the Note from the 9/1/2008,and such other costs and fees as are provided by statute.

V.        The above-described real property will be sold to satisfy the expense of sale and the obligation secured by the Deed of Trust as provided by statute.  Said sale will be made without warranty, expressed or implied, regarding title, possession or encumbrances on 9/18/2009. The defaults referred to in Paragraph III must be cured by 9/7/2009 (11 days before the sale date) to cause a discontinuance of the sale.  The sale will be discontinued and terminated if at any time before  9/7/2009 (11 days before the sale) the default as set forth in Paragraph III is cured and the Trustee's fees and costs are paid. Payment must be in cash or with cashier's or certified checks from a State or federally chartered bank.  The sale may be terminated any time after the  9/7/2009 (11 days before the sale date) and before the sale, by the Borrower or Grantor or the holder of any recorded junior lien or encumbrance by paying the principal and interest, plus costs, fees and advances, if any, made pursuant to the terms of the obligation and/or Deed of Trust.

VI.        A written Notice of Default was transmitted by the Beneficiary or Trustee to the Borrower and Grantor at the following address(es):

| NAME | ADDRESS |
|---|---|
| **MICHAEL J. THORNES & JILL D. THORNES,** | 13710 28TH AVENUE NORTHWEST |
| **HUSBAND & WIFE** | MARYSVILLE, WA 98271 |

by both first class and certified mail on **2/18/2009**, proof of which is in the possession of the Trustee; and the Borrower and Grantor were personally served, if applicable, with said written Notice of Default or the written Notice of Default was posted in a conspicuous place on the real property described in Paragraph I above, and the Trustee has possession of proof of such service or posting.

VII.        The Trustee whose name and address are set forth below will provide in writing to anyone requesting it, a statement of all costs and fees due at any time prior to the sale.

VIII.        The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor of all their interest in the above-described property.

IX.        Anyone having any objections to this sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130.  Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.

Exhibit E
Page 2 of 4

Order No.: 30020301

## EXHIBIT "A"

THAT PORTION OF LOT 8, NORTH EVERETT SUBURBAN TRACTS, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 22 OF PLATS, PAGES 91 AND 92, IN SNOHOMISH COUNTY, WASHINGTON, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF SAID LOT 8, THENCE NORTH 89°42'51" EAST 435 FEET TO THE TRUE POINT OF BEGINNING;
THENCE SOUTH 0°14'29" EAST 120 FEET;
THENCE SOUTH 89°42'51" WEST 435 FEET;
THENCE SOUTH 0°44'29" EAST 20.01 FEET TO THE SOUTHWEST CORNER OF SAID LOT 8;
THENCE NORTH 89°42'51" EAST 639.78 FEET TO THE SOUTHEAST CORNER OF SAID LOT 8;
THENCE NORTH 0°28'10" WEST 140 FEET TO THE NORTHEAST CORNER OF SAID LOT 8;
THENCE SOUTH 89°42'51" WEST 205.45 FEET TO THE TRUE POINT OF BEGINNING.

SITUATE IN THE COUNTY OF SNOHOMISH, STATE OF WASHINGTON.

Loan No: ████5607                    T.S. No.: WA-09-246959-SH

NOTICE TO OCCUPANTS OR TENANTS – The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the deed of trust (the owner) and anyone having an interest junior to the deed of trust, including occupants and tenants. After the 20th day following the sale the purchaser has the right to evict occupants and tenants by summary proceedings under the Unlawful Detainer Act, Chapter 59.12 RCW.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

**If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee, or the Mortgagee's Attorney.**

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

DATED: 6/17/2009

Quality Loan Service Corp. of Washington, as Trustee
By: Seth Ott, Asst. Secretary

For Non-Sale, Payoff and Reinstatement info          For Service of Process on Trustee:
Quality Loan Service Corp of Washington              Quality Loan Service Corp., of Washington
2141 Fifth Avenue                                    600 Winslow Way East, Suite 234
San Diego, CA 92101                                  Bainbridge Island, WA 98110
(619) 645-7711                                        (866) 645-7711
Sale Line: 714-573-1965 or Login to:
www.priorityposting.com

State of California)
County of San Diego)

On ___6/17/09___ before me, **D. E. Turner**, a notary public, personally appeared **Seth Ott**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature _____          (Seal)
              D. E. Turner

D. E. TURNER
COMM. # 1830006
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
MY COMM. EXP. JAN. 9, 2013

ELECTRONICALLY RECORDED
201007290275                4
07/29/2010 01:07 PM        65.00
SNOHOMISH COUNTY, WASHINGTON

RECORDING REQUESTED BY
IBM Lender Business Process Services, Inc.
(LBPS)
14523 SW Millikan Way, Suite 200
Beaverton, OR 97005

AND WHEN RECORDED MAIL TO:
Quality Loan Service Corp. of Washington
2141 5th Avenue
San Diego, CA 92101

3/3/150

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN: 005320-000-008-01
TS No: WA-09-246959-SH

## NOTICE OF TRUSTEE'S SALE
## PURSUANT TO THE REVISED CODE OF WASHINGTON
## CHAPTER 61.24 ET. SEQ.

I.        NOTICE IS HEREBY GIVEN that Quality Loan Service Corp. of Washington, the undersigned Trustee, will on 11/5/2010, at 10:00 AM, At the main entrance to the Superior Courthouse 3000 Rockefeller Avenue, Everett, WA sell at public auction to the highest and best bidder, payable, in the form of cash, or cashier's check or certified checks from federally or State chartered banks, at the time of sale the following described real property, situated in the County of SNOHOMISH, State of Washington, to-wit:

ABBREVIATED LEGAL
PTN LOT 8, NORTH EVERETT SUBURBAN TRACTS, VOLUME 22 PAGES 91 & 92
PLEASE SEE ATTACHED FOR FULL LEGAL

Commonly known as:
13710 28TH AVENUE NORTHWEST
MARYSVILLE, WA 98271

which is subject to that certain Deed of Trust dated 7/20/2007, recorded 7/24/2007, under Auditor's File No. 200707240267, in Book XXX, Page XXX, records of SNOHOMISH County, Washington, from MICHAEL J. THORNES & JILL D. THORNES, HUSBAND & WIFE, as Grantor(s), to FIRST AMERICAN TITLE INSURANCE COMPANY, as Trustee, to secure an obligation in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR FIST HORIZON HOME LOANS, A DIVISION OF FIST TENNESSEE BANK N.A., as Beneficiary, the beneficial interest in which was assigned by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR FIST HORIZON HOME LOANS, A DIVISION OF FIST TENNESSEE BANK N.A. to MetLife Home Loans, a division of MetLife Bank, N.A. .

II.        No action commenced by the Beneficiary of the Deed of Trust is now pending to seek satisfaction of the obligation in any Court by reason of the Borrower's or Grantor's default on the obligation secured by the Deed of Trust/Mortgage.

III.        The default(s) for which this foreclosure is made is/are as follows:
Failure to pay when due the following amounts which are now in arrears: $67,441.69

Exhibit F
Page 1 of 4

IV.     The sum owing on the obligation secured by the Deed of Trust is:  The principal sum of $349,500.00, together with interest as provided in the Note from the 9/1/2008, and such other costs and fees as are provided by statute.

V.      The above-described real property will be sold to satisfy the expense of sale and the obligation secured by the Deed of Trust as provided by statute. Said sale will be made without warranty, expressed or implied, regarding title, possession or encumbrances on 11/5/2010. The defaults referred to in Paragraph III must be cured by 10/25/2010 (11 days before the sale date) to cause a discontinuance of the sale.  The sale will be discontinued and terminated if at any time before 10/25/2010 (11 days before the sale) the default as set forth in Paragraph III is cured and the Trustee's fees and costs are paid. Payment must be in cash or with cashiers or certified checks from a State or federally chartered bank.  The sale may be terminated any time after the  10/25/2010 (11 days before the sale date) and before the sale, by the Borrower or Grantor or the holder of any recorded junior lien or encumbrance by paying the principal and interest, plus costs, fees and advances, if any, made pursuant to the terms of the obligation and/or Deed of Trust.

VI.     A written Notice of Default was transmitted by the Beneficiary or Trustee to the Borrower and Grantor at the following address(es):

| NAME | ADDRESS |
|------|---------|
| MICHAEL J. THORNES & JILL D. THORNES, HUSBAND & WIFE | 13710 28TH AVENUE NORTHWEST MARYSVILLE, WA 98271 |

by both first class and certified mail on 2/18/2009, proof of which is in the possession of the Trustee; and the Borrower and Grantor were personally served, if applicable, with said written Notice of Default or the written Notice of Default was posted in a conspicuous place on the real property described in Paragraph I above, and the Trustee has possession of proof of such service or posting.

VII.    The Trustee whose name and address are set forth below will provide in writing to anyone requesting it, a statement of all costs and fees due at any time prior to the sale.

VIII.   The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor of all their interest in the above-described property.

IX.     Anyone having any objections to this sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.

X.      NOTICE TO OCCUPANTS OR TENANTS – The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the deed of trust (the owner) and anyone having an interest junior to the deed of trust, including occupants who are not tenants.  After the 20th day following the sale the purchaser has the right to evict occupants who are not tenants by summary proceedings under Chapter 59.12 RCW.  For tenant-occupied property, the purchaser shall provide a tenant with written notice in accordance with RCW 61.24.060.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

**If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee, or the Mortgagee's Attorney.**

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

T.S. No.: WA-09-246959-SH

DATED: 7/28/2010

Quality Loan Service Corp. of Washington, as Trustee
By: Brooke Frank, Assistant Secretary

| | |
|---|---|
| For Non-Sale, Payoff and Reinstatement info | For Service of Process on Trustee: |
| Quality Loan Service Corp of Washington | Quality Loan Service Corp., of Washington |
| 2141 Fifth Avenue | 19735 10th Avenue NE |
| San Diego, CA 92101 | Suite N-200 |
| (866) 645-7711 | Poulsbo, WA 98370 |
| Sale Line: 714-573-1965 or Login to: | (866) 645-7711 |
| www.priorityposting.com | |

State of California)
County of San Diego)

On 7/28/10 before me, Brenda Susana Perez, a notary public, personally appeared Brooke Frank, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
Brenda Susana Perez

BRENDA SUSANA PEREZ
Commission # 1693771
Notary Public - California
San Diego County
My Comm. Expires Sep 18, 2010

3

Exhibit F
Page 3 of 4

Order No.: 30020301

**EXHIBIT "A"**

THAT PORTION OF LOT 8, NORTH EVERETT SUBURBAN TRACTS, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 22 OF PLATS, PAGES 91 AND 92, IN SNOHOMISH COUNTY, WASHINGTON, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF SAID LOT 8, THENCE NORTH 89°42'51"
EAST 435 FEET TO THE TRUE POINT OF BEGINNING;
THENCE SOUTH 0°14'29" EAST 120 FEET;
THENCE SOUTH 89°42'51" WEST 435 FEET;
THENCE SOUTH 0°44'29" EAST 20.01 FEET TO THE SOUTHWEST CORNER OF SAID LOT
8;
THENCE NORTH 89°42'51" EAST 639.78 FEET TO THE SOUTHEAST CORNER OF SAID LOT
8;
THENCE NORTH 0°28'10" WEST 140 FEET TO THE NORTHEAST CORNER OF SAID LOT 8;
THENCE SOUTH 89°42'51" WEST 205.45 FEET TO THE TRUE POINT OF BEGINNING.

SITUATE IN THE COUNTY OF SNOHOMISH, STATE OF WASHINGTON.

Exhibit F
Page 4 of 4

WAWD CM/ECF Version 4.1.1                                                  Page 1 of 2

JURYDEMAND

## U.S. District Court
## United States District Court for the Western District of Washington (Seattle)
## CIVIL DOCKET FOR CASE #: 2:10-cv-01716-MJP

Thornes et al v. IBM Lender Business Process Services Inc et al

Assigned to: Judge Marsha J. Pechman
Demand: $3,000,000
Cause: 15:1601 Truth in Lending

Date Filed: 10/22/2010
Jury Demand: Plaintiff
Nature of Suit: 220 Real Property: Foreclosure
Jurisdiction: Federal Question

**Plaintiff**

**Michael J Thornes**                          represented by   **Michael J Thornes**
                                                                13710 28TH AVE NORTHWEST
                                                                MARYSVILLE, WA 98271
                                                                425-501-5769
                                                                Email: mjthornes@gmail.com
                                                                PRO SE

**Plaintiff**

**Jill D Thornes**                             represented by   **Jill D Thornes**
                                                                13710 28TH AVE NORTHWEST
                                                                MARYSVILLE, WA 98271
                                                                425-501-5682
                                                                PRO SE

V.

**Defendant**

**IBM Lender Business Process Services Inc**

**Defendant**

**Fannie Mae**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 10/22/2010 | 1 | PETITION, filed by Michael J Thornes and Jill D Thornes. (Attachments: # 1 Civil Cover Sheet)(Sms issued) (Receipt #SEA37354)(CL) (Entered: 10/22/2010) |
| 10/22/2010 | 2 | MOTION for Temporary Restraining Order by Plaintiffs Jill D Thornes and Michael J Thornes. (Attachments: # 1 Memorandum in support, # 2 Affidavit)(CL) (Entered: 10/22/2010) |
| 10/22/2010 | 3 | MOTION for Temporary Injunction by Plaintiffs Jill D Thornes and Michael J Thornes. (CL) (Entered: 10/22/2010) |

| 10/22/2010 | 4 | DEMAND for JURY TRIAL by Plaintiffs Jill D Thornes and Michael J Thornes. (CL) (Entered: 10/22/2010) |
| 10/22/2010 | 5 | AFFIDAVIT OF NOTICE/CERTIFICATE OF SERVICE by Plaintiff Michael J Thornes re 2 MOTION for Temporary Restraining Order. (CL) (Entered: 10/22/2010) |
| 10/22/2010 | 6 | AFFIDAVIT OF NOTICE/ CERTIFICATE OF SERVICE by Plaintiff Michael J Thornes re 2 MOTION for Temporary Restraining Order to LBPS c/o Jane Bowman.(CL) (Entered: 10/22/2010) |
| 10/29/2010 | 7 | AFFIDAVIT of Service of Summons and Complaint on Sandy Friedman on 10/26/2010, filed by Plaintiffs Jill D Thornes, Michael J Thornes. (Thornes, Michael) (Entered: 10/29/2010) |
| 10/29/2010 | 8 | AFFIDAVIT of Service of Summons and Complaint on Marcie Abendroth on 10/26/2010, filed by Plaintiffs Jill D Thornes, Michael J Thornes. (Thornes, Michael) (Entered: 10/29/2010) |
| 11/04/2010 | 9 | ORDER denying 2 Plaintiffs' Motion for TRO Preliminary Injunction Hearing set for 11/23/2010 at 10:00 AM before Judge Marsha J. Pechman by Judge Marsha J. Pechman.(MD, mailed copy of order to pltfs) (Entered: 11/04/2010) |
| 11/04/2010 | 10 | MINUTE ORDER - regarding resources related to foreclosures by Judge Marsha J. Pechman. (MD, mailed copy of order to pltfs) (Entered: 11/04/2010) |
| 11/15/2010 | | 3 MOTION for Preliminary Injunction : Noting Date 11/19/2010, by Judge Marsha J. Pechman. (MC) (Entered: 11/15/2010) |

| **PACER Service Center** | | |
| --- | --- | --- |
| **Transaction Receipt** | | |
| 11/17/2010 11:06:09 | | |
| **PACER Login:** | rc0114 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:10-cv-01716-MJP |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

Exhibit G
Page 2 of 2